| | |
|---|---|
| **OAKLAND BENTA and**<br>**ANTHONY ELSKOE,** | )<br>) **D.C. CIV APP. NO. 2002/0122**<br>) **Sup. CT. CIV NO. 264/2000**<br>) |
| Appellants, | )<br>) |
| v. | )<br>) |
| **ADELBERT BRYAN,** | )<br>) |
| Appellee. | )<br>) |

On Appeal from the Superior Court of the Virgin Islands
Considered: OCTOBER 19, 2007
Filed: _____21_____, 2009

**Before:** **CURTIS V. GOMEZ**, Chief Judge, District Court of
the Virgin Islands; **RAYMOND L. FINCH**, Judge of the
District Court of the Virgin Islands; and **LEON A.
KENDALL**, Judge of the Superior Court of the Virgin
Islands, sitting by designation.

**Attorneys:**

Yvette D. Ross-Edwards, Esq.
St. Croix, U.S.V.I.
    **Attorney for Appellants,**

Maxwell D. McIntosh, Esq.
St. Croix, U.S.V.I.
    **Attorney for Appellee.**

**Per Curiam.**

**Memorandum Opinion**

I.   **FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

On July 3, 1998, a Commission established by the Governor
of the Virgin Islands organized a ceremony in Frederiksted, St.
Croix, to celebrate the 150th Anniversary of "Emancipation Day,"
an annual event commemorating the end of slavery in the Virgin
Islands. Several prominent speakers were involved in the event
and dignitaries were invited from the continental United States
and other Caribbean and African nations.

At the time, Appellee was a Senator in the Twenty-Second
Virgin Islands Legislature.  Appellant Oakland Benta ("Benta")was
the Director of Security for Emerging Communications [hereinafter
"Emcom"], a private corporation. Benta was responsible for
providing security to Emcom's facilities and personnel.
Appellant Anthony Elskoe ("Elskoe") worked for Emcom under
Benta's supervision.

Organizers of the event constructed a large "bandstand"
with seating for dignitaries, speakers and other guests.  The
bandstand contained two sets of stairs: one at the east entrance
and another at the west entrance to the bandstand.  The
Governor's Chief of Security, Mr. Ludrick Thomas, was situated at
the west entrance as were Appellants Benta and Elskoe.[4] The

Appellants' ostensible presence on the bandstand was to provide
security for Mr. Samuel Ebbeson, an Emcom employee.

Appellee was scheduled to deliver a speech at the ceremony.
Before the event began, however, Appellee discovered that his
name was omitted from the program. Appellant approached the
Governor, who assured him that his place in the program was
secure.

Approximately forty-five (45) minutes into the program,
after expressing displeasure concerning his placement in the
program, and before he was scheduled to speak, Appellee attempted
to enter the bandstand through its western entrance. As he was
walking up the staircase, a group of security guards, including
the Governor's Chief of Security, Ludrick Thomas and Benta denied
him entry. Elskoe apparently joined the group from the other
entrance and pushed Appellee to block his access.

After a brief melee, in which police, security guards and
Appellee's aides were involved, Appellee quickly walked across to
the other entrance of the bandstand. Here, he was confronted by
a female police officer, Ms. Harriet Williams, who also denied
him entry and another struggle ensued. Three other individuals
joined the fracas to restrain Appellee and at one point he was
bent over backwards with an unknown individual's hands around his
neck. By the time the altercation cleared, the Governor and
several other dignitaries had left the venue for a more secure

location.

On June 6, 2000, Appellee initiated an action for damages in the Superior Court. He alleged that the Appellants acted as agents of the Government and violated his First Amendment Right to Free Speech when they denied him access to the stage. Appellant also alleged that the Appellees were liable for damages resulting from assault and battery.

During a trial conducted between August 5 and 12, 2002, Appellants moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 (a) at the close of Appellee's case in chief and then again after all arguments were presented. Their motions were denied on both occasions and the matter was submitted to the jury for deliberation.

The jury entered a verdict of two hundred and seventy eight thousand dollars ($278,000.00) against Appellants on the First Amendment claim. Specifically, Appellee was awarded one hundred and sixty thousand dollars ($160,000.00) against Elskoe; and one hundred thousand dollars ($100,000.00) against Benta for violating his Constitutional right to Free Speech. The jury also awarded Appellee damages of fifteen thousand dollars ($15,000.00)against Elskoe for assault and battery and one thousand five hundred dollars ($1,500.00) against each Appellant for medical expenses.

The trial court entered judgment on the jury's verdict on August 23, 2002. At no point did the Appellants raise a post-verdict motion for judgment as a matter of law or request a new trial.[1] Instead, this timely appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has appellate jurisdiction over the Superior Court's final judgment pursuant to Revised Organic Act of 1954, as amended, § 23A, (48 U.S.C.A. § 1613a)[2], V.I. Code Ann. tit. 4, § 33(2001).[3] On appeal of a denial of a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50, the standard of review is plenary. *Goodman v. Pennsylvania Turnpike Comm'n*, 293 F.3d 655, 664-665 (3d Cir. 2001)(Appellant filed post-verdict motion for directed verdict and motion for a new trial). The legal foundation for the jury's verdict is reviewed de novo while the factual findings are reviewed to determine if there is a rational basis for the verdict in the evidence, drawing all favorable inferences to the prevailing party that are justifiable

---

[1] The record submitted does not contain the final portion of the trial transcript where the jury read its verdict and the parties were excused. However, the docket entries and record of proceedings do not contain any notations indicating that any post trial motions were filed. (App. 6-17.) Moreover, neither Appellants' brief describing the procedural motions relevant to the matter nor Appellants' statement of the case indicate that any post-trial motions were filed. Appellee did not file a brief.

[2] The Complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), reprinted in V.I. Code Ann. 73-177, Historical Documents, Organic Acts and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. Code Ann. Tit. 1).

[3] The Appellants filed their notice of appeal on August 22, 2002.

in the evidence. *Stelwagon Mfg. Co. v. Tarmac Roofing Systems, Inc.*, 63 F.3d 1267, 1271 (3d Cir. 1995).

The trial court's factual findings with respect to damages are reviewed under the clearly erroneous standard. *See, e.g., Berg Chilling Systems, Inc. v. Hull Corp.*, 369 F.3d 745, 754 (3d Cir. 2004) (citing *Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 53 (3d Cir. 2001)). Generally, we review the trial court's decisions concerning admissibility of evidence for abuse of discretion. *Coleman v. Home Depot*, 306 F.3d 1333, 1341 (3d Cir. 2002).

## III. DISCUSSION

The Appellants argue that: the trial court erred in denying their Rule 50(a) motions for directed verdict; the evidence at trial was insufficient to support the jury's damages award for medical expenses; and the trial court erred in excluding proffered evidence.

### A. Rule 50

The Appellants claim that the evidence presented at trial failed to show that the Appellee had a Constitutionally protected right to speak on the bandstand. We, however, are procedurally barred from reviewing this challenge because the Appellants failed to renew their motions for judgment as a matter of law

following the jury verdict.[4] *See* Fed. R. Civ. P. 50(b).

Federal Rule of Civil Procedure 50 sets forth the requisite procedural framework for challenging the sufficiency of the evidence in a civil jury trial. The rule establishes two stages during which a party may seek judgment as a matter of law: prior to submission of the case to the jury and after the verdict and entry of judgment.

### 1. Challenge to the sufficiency of the evidence prior to a jury verdict

Fed. R. Civ. P. 50(a) allows a party to challenge the sufficiency of the evidence *prior* to submission of the case to the jury. Federal Rule of Civil Procedure 50(a), provides that:

(a) Judgment as a Matter of Law.

(1) In General.     If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

---

[4] Where a party fails to file a post-verdict motion under Rule 50(b)(judgment notwithstanding the verdict) "the appellate court [is] without power to direct the [trial court] to enter judgment contrary to the one it had permitted to stand." *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 218 (1947)(citations omitted); *see also Young v. Langley*, 793 F.2d 792, 794 (6th Cir. 1986)(where a party fails to renew its Rule 50(a) motion following the jury verdict per Rule 50(b), the motion is not properly preserved for appeal); *see also Allison v. City of East Lansing*, 484 F.3d 874, 876 (6th Cir. Mich. 2007)(renewing a post-judgment as a matter of law is jurisdictional and cannot be waived); *see also Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006) (same).

(A)   resolve the issue against the party; and

(B)   grant a motion for judgment as a matter of law
      against the party on a claim or defense that,
      under the controlling law, can be maintained
      or defeated only with a favorable finding on
      that issue.

(2) Motion.    A motion for judgment as a matter of law
               may be made at any time before the case
               is submitted to the jury. The motion must
               specify the judgment sought and the law
               and facts that entitle the movant to the
               judgment.

*Id.*[5]

### 2.   Challenge to the sufficiency of the evidence after the entry of a jury verdict under Fed. R. Civ. P. 50(b)

Rule 50(b) sets forth the procedural requirements for a

sufficiency of the evidence challenge <u>after</u> the jury verdict and

entry of judgment. Fed. R. Civ. P. 50(b) provides in pertinent

part that:

(b)   Renewing Motion for Judgment After Trial;
      Alternative Motion for New Trial.

---

[5] The term "directed verdict" was revised to "judgment as a matter of law" in 1991. "The revision abandons the familiar terminology of direction of verdict for several reasons. The term is misleading as a description of the relationship between judge and jury. It is also freighted with anachronisms some of which are the subject of the text of former subdivision (a) of this rule that is deleted in this revision. Thus, it should not be necessary to state in the text of this rule that a motion made pursuant to it is not a waiver of the right to jury trial, and only the antiquities of directed verdict practice suggest that it might have been. The term 'judgment as a matter of law' is an almost equally familiar term and appears in the text of Rule 56; its use in Rule 50 calls attention to the relationship between the two rules. Finally, the change enables the rule to refer to pre-verdict and post-verdict motions with a terminology that does not conceal the common identity of two motions made at different times in the proceeding." Fed. R. Civ. P. 50(a) advisory committee note on 1991 amendment.

> If, the court does not grant a motion for judgment as a matter of law made under subdivision (a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. <u>The movant may renew its request for judgment as a matter of law</u> by filing a motion no later than 10 days after entry of <u>judgment--and may alternatively request a new trial or join a motion for a new trial under Rule 59.</u> In ruling on a renewed motion, the court may:
>
> (1) if a verdict was returned:
> (A) allow the judgment to stand,
> (B) order a new trial, or (C) direct entry of judgment as a matter of law.

*Id.* (emphasis added).[6]

Hence, if a party in a civil jury trial believes that the evidence is legally insufficient to support an adverse jury verdict she must first seek judgment as a matter of law by filing a Fed. R. Civ. P. 50(a) <u>before</u> submission of the case to the jury. *Unitherm*, 546 U.S. at 396. If the Rule 50(a) motion is not granted and the jury subsequently decides against her, she may renew her pre-verdict arguments by filing a <u>post-verdict</u> motion pursuant to Rule 50(b) (formerly referred to as judgment notwithstanding the verdict).[7] *Id.*

**B.    Failure to renew a motion for judgment as a matter of**

---

[6] Rule 50(b) was promulgated largely with the idea in view of avoiding unnecessary new trials. *Vearn v. Crane*, 114 F.2d 896, 898 (7th Cir. 1940).

[7] Prior to amendment, Rule 50(b) motions were referred to as motions for "judgment notwithstanding the verdict". The restyling of the term, however, does not affect our considerations regarding the requisite procedural framework. *See* Fed. R. Civ. P. 50 advisory committee note. ("if a motion is denominated a motion for directed verdict or for judgment notwithstanding the verdict, the party's error is merely formal. Such a motion should be treated as a motion for judgment as a matter of law in accordance with this rule.") *Id.* As such, we use the terms interchangeably.

**law under Fed. R. Civ. P. 50(b)**

Here, the Appellants moved for a Rule 50(a) judgment as a matter of law at the close of the Appellee's case. The court denied the motion. After all the evidence had been presented, Appellants renewed their Rule 50 motion. The court also denied their renewed motion. The matter was subsequently submitted to the jury for deliberation. The jury returned a verdict in favor of the Appellee.

However, after the jury verdict, the Appellants neither renewed their motion for judgment as a matter of law under Rule 50(b), nor requested a new trial under Rule 59. The Appellants' failure to file these post-verdict motions are fatal to our substantive review. As a result, we cannot reach their pre-verdict Rule 50(a) challenge or their challenge to the damages award.[8]

The Supreme Court has addressed the implications of a party's failure to file a post-verdict motion for judgment as a matter of law in several procedural contexts. In *Cone*, the Supreme Court was called upon to decide a case where the petitioner filed an action for damages arising from trespass upon land.[9] *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212 (1947)(citations omitted). The

---

[8] *See Cone*, 330 U.S. at 218.

[9] The action was originally filed in state court but was removed to a federal district court because of diversity of citizenship. 330 U.S. 212.

jury returned a verdict for petitioner. *Id.* The trial court denied

respondent's motion for a new trial on the ground of newly

discovered evidence. *Id.* Despite the fact that no post-verdict

motion for judgment notwithstanding the verdict had been made, the

Fourth Circuit Court of Appeals reversed and directed that

judgment be entered for respondent.[10] *Id.*

On further appeal, the Supreme Court reversed the Fourth

Circuit's decision. The Supreme Court explained that,

> [i]n this case, had respondents made a timely motion for
> judgment notwithstanding the verdict, the petitioner could
> have either presented reasons to show why he should have
> a new trial, or at least asked the court for permission to
> dismiss. If satisfied from the knowledge acquired from the
> trial and because of the reasons urged that the ends of
> justice would best be served by allowing petitioner
> another chance, the judge could have so provided in his
> discretion. The respondent failed to submit a motion for
> judgment notwithstanding the verdict to the trial judge in
> order that he might exercise his discretionary power to
> determine whether there should be such a judgment, a
> dismissal or a new trial. In the absence of such a motion,
> we think the appellate court was without power to direct
> the District Court to enter judgment contrary to the one
> it had permitted to stand.

*Cone*, 330 U.S. 218.

The high court further posited that, "because a motion for

judgment notwithstanding the verdict permits the trial court to

exercise its discretion to choose between ordering a new trial and

---

[10] On appeal, the court of appeals specifically held that certain
evidence had been improperly admitted and that petitioner's evidence was
insufficient to go to the jury. 330 U.S. 212-218.

entering judgment, its appraisal of the bona fides of the claims asserted by the litigants is of great value in reaching a conclusion . . ." *Id.* at 216.

In *Unitherm Food Sys. v. Swift-Eckrich, Inc.*, the petitioner was a competitor of the respondent patentee, who alleged that the patentee committed an antitrust violation.[11]  In this 2006 case, the patentee's motion for judgment as a matter of law at the close of the competitor's case under Rule 50(a) was denied, and the patentee failed to renew the motion or file a 50(b) post-verdict motion for a new trial. *Id.* Nonetheless, on appeal the U.S. Court of Appeals for the Federal Circuit, granted the patentee's motion for a new trial. *Id.* The Federal Circuit Court held that such relief was proper since the sufficiency of the evidence was raised in its Rule 50(a) motion. *Id.*

Again, the Supreme Court reversed the appellate court's decision. Upon grant of certiorari, the U.S. Supreme Court held that the patentee's failure to renew its pre-verdict 50(a) motion as a post-verdict motion under Rule 50(b), precluded appellate review. *See id.* The Court held that "the precise subject matter of a party's Rule 50(a) motion--namely, its entitlement to judgment as a matter of law--cannot be appealed unless that motion is

---

[11] 546 U.S. 394, 401 (2006)(citations omitted).

renewed pursuant to Rule 50(b)."[12] *Unitherm*, 546 U.S. at 404; *see also Johnson v. New York, N. H. & H. R. Co.*, 344 U.S. 48, 52-54 (1952)(citations omitted).

For over half a century, the Supreme Court has explained that a renewed post-verdict motion for a directed verdict is necessary at the trial court level because, it calls for the "judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." *Cone*, 330 U.S. at 216. The Supreme Court has further underscored that the requirement of a timely application for judgment after verdict is not an "idle motion because it is . . . an essential part of the rule, firmly grounded in principles of fairness." *Johnson*, 344 U.S. at 53.[13]

Here, the Appellants raised and renewed a well-articulated Rule 50(a) motion. However, the Appellants forfeited their right to substantive review of the trial court's 50(a) ruling when they failed to file any post-trial motions, including a Rule 50(b)

---

[12]The Supreme Court's observations about the necessity of a post-verdict motion under Rule 50(b), and the benefits of the trial court's input at that stage, explicitly apply with equal force whether a party is seeking judgment as a matter of law or simply a new trial. *Unitherm Food Sys.*, 546 U.S. at 406-407.

[13] The Supreme Court has reiterated the value of the trial court's input, cautioning the courts of appeals to be "constantly alert to the trial judge's first-hand knowledge of witnesses, testimony, and issues." *Weisgram v. Marley Co.*, 528 U.S. 440, 443 (2000)(citing *Neely*, 386 U.S. at 325).

motion.[14] *See Unitherm Food Sys.*, 546 U.S. at 405, 408; *Gleason v.*
*Norwest Mortg., Inc.*, 253 Fed. Appx. 198, 202 (3d Cir. 2007);
*Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.*, 921
F.2d 467, 475 (3d Cir. 1990).[15]

We are aware that a minority of appellate courts have found a
cognizable basis for substantively reviewing, then remanding a case
in the absence of Rule 50(b) motion.[16] We however, take our guidance
from Supreme Court decisions and the Third Circuit's consistent
position on this issue. *See Jacob v. AMTRAK*, 63 Fed. Appx. 610, 613
(3d Cir. 2003)(where a party fails to renew a motion for judgment
as a matter of law within ten days of the entry of final judgment,
as is required by Federal Rule of Civil Procedure 50, he waives his
claim for judgment as a matter of law); *Williams v. Guzzardi*, 875
F.2d 46, 50 n.6 (3d Cir. 1989)(same); *see also Gleason v. Norwest*
*Mortg., Inc.*, 253 Fed. Appx. 198, 202 (3d Cir. 2007)(declining to
consider sufficiency of the evidence challenge in the absence of a

---

[14] Appellants may have also triggered our substantive review by filing a
Rule 59 Motion for a new trial or to amend the judgment. However, the
Appellants filed no post-trial motions. *See* Fed. R. Civ. P. 59.

[15] *Hi Ltd. P'ship v. Winghouse of Fla., Inc.*, 451 F.3d 1300, 1301 (11th
Cir. 2006) (holding that whatever the merits of the sufficiency-of-the-
evidence challenge, the court "had no authority" to consider the motion absent
an appropriate post-verdict motion in the district court).

[16] *See Benner v. Nationwide Mut. Ins. Co.*, 93 F.3d 1228, 1234 (4th Cir.
1996) (finding motion for directed verdict under Rule 50(a) adequate to
preserve sufficiency of evidence argument on appeal despite failure to move
for judgment n.o.v. under Rule 50(b); *Morrash v. Strobel*, 842 F.2d 64, 69-70
(4th Cir. 1987) (finding that party's failure to move for judgment n.o.v.
limited the appellate court to vacating judgment and remanding for new trial);
*Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 162 (5th Cir. 1985)(same).

Rule 50(b) motion); *Charles Jacquin Et Cie, Inc. v. Destileria*

*Serralles, Inc.*, 921 F.2d 467, 475 (3d Cir. 1990)("[w]here a party

has failed to move for j.n.o.v., we will not review the sufficiency

of the evidence and direct a verdict for them..."); *Woods v.*

*National Life and Accident Ins. Co.*, 347 F.2d 760, 769 (3d Cir.

1965)("[a] party's failure to file a motion for judgment n.o.v. in

the trial court precludes an examination of the record by that

court or this court for the purpose of ascertaining whether that

party was entitled to a directed verdict."); *Anderson v. Haas*, 341

F.2d 497, 502 (3d Cir. 1965)("We are restrained from considering

the entry of judgment for the defendants because counsel failed to

renew the motion for a directed verdict by a motion for judgment

*non obstante veredicto* as required under Rule 50...").

We recognize that the Appellants' procedural oversight

seemingly imposes a harsh result,[17] however, "[n]o procedural

---

[17] We recognize the harshness of the result we reach today, especially in light of the viability of Bryan's 42 U.S.C. § 1983 claim. Indeed, the evidence adduced at trial established that Appellants were employed as private security guards for a private telecommunications company. In such a case, "[t]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action [of the private party] so that the action of the latter may be fairly treated as that of the State itself." *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993) (alteration in original) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).

Here, other than sparse testimony from the Governor's security chief about a split-second instruction he gave to Appellants directing them to stop Bryan from mounting the bandstand, the record contains precious little evidence of a "close nexus" between Appellants and the territorial authorities.

Bryan also had to demonstrate that he had a First Amendment right to speak on the bandstand at the Emancipation Day celebration and that Appellants deprived him of that right. The record shows no such thing. Even assuming the Constitution invested in Bryan a right to speak on the bandstand -- and we know of no authority to support that proposition -- the record does not

principle is more familiar to this Court than that a . . . right may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444,(1944). Accordingly, we can neither review the trial court's Rule 50(a) decision nor the jury award for error because the Appellants failed to take the appropriate procedural post-verdict course of action to perfect our substantive review. *See, e.g., Unitherm*, 546 U.S. at 406.

## C.    Admission of Evidence

Admission of evidence and testimony is discretionary and is reviewed for abuse of discretion, but, to the extent the trial court's ruling turns on an interpretation of those rules, the review is plenary.[18] V.I. Code Ann. tit. 5, § 836(b); *Government of the Virgin Islands v. Petersen*, 131 F. Supp. 2d 707, 709-710 (D.V.I. 2001); *see Government of the Virgin Islands v. Texido*, 89 F. Supp. 2d 680, 683 (D.V.I. App. Div. 2000); *Charleswell v. Government of the Virgin Islands*, 167 F.R.D. 674, 678 (D.V.I. App. Div. 1996); *Rivera v. Government of the Virgin Islands*, 635 F.

---

reflect that Appellants, or anyone else, actually deprived Bryan of his right to express himself. Even if Bryan is given the benefit of every reasonable inference, the evidence shows only that Appellants became involved in a relatively brief, physical altercation with Bryan after Bryan attempted to gain access to a restricted area. That evidence, on its own, hardly suggests that Appellants aimed to prevent Bryan from exercising his right to free speech.

[18] An abuse of discretion arises when the trial court's decision rests upon "a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).

Supp. 795, 798 (D.V.I. App. Div. 1986); *Coleman v. Home Depot, Inc.*, 306 F. 3d 1333, 1341 (3d Cir. 2002).[19]

### 1. Appellee's Interview

On July 3, 1998, after the events surrounding the emancipation ceremonies unfolded, the Appellee was interviewed by local radio stations at which time he spoke about what had occurred during the ceremony. (App. 543-555.) On appeal, Appellants challenge what they now characterize as the trial court's "exclusion" of one of those tape recorded interviews ("interview").

While cross examining the Appellee, the Appellants requested that the court play one particular interview. The Appellants proffered the tape recording for the purpose of refreshing the party-opponent's recollection as to what he said, concerning the events on the day in question. The trial court judge excused the jury from the courtroom and allowed the recording to be played for the purpose of refreshing the witness' recollection. (App. 543-555.)

After the jury returned to the courtroom, Appellants' counsel asked if it could play a portion of the interview. The request was initially denied. Counsel then moved to have the tape recording

---

[19] Even if the court abused its discretion, the judgment may not be set aside unless the defendant made a sufficient proffer of evidence, and this Court finds that the excluded evidence would probably have substantial influence in bringing about a different verdict. V.I.Code Ann. tit. 5, § 775.

admitted into evidence. (App. 560.)  Appellee's defense counsel

failed to object. (*Id.*) The tapes were then admitted into

evidence.[20] (*Id.*; App. 1197.)

Subsequently, however, the Appellants did not revisit playing

the tape recorded interview to the jury nor otherwise move to have

the interview played back as substantive evidence in open court.

(*Id.*) Instead, questioning of the witness simply proceeded.[21]

Now, for the first time on appeal, the Appellants contend that

portions of the interview are probative of Appellee's "hostile"

state of mind and should have been played in open court. However,

our exhaustive review of the trial court transcripts reveals there

was never an improper exclusion of the tapes at trial.  If any

error occurred, it was counsel's failure to request that the tape-

recorded interview, once admitted, be played in open court.

The only point where the Appellants sought to have the

interview played in open court was prior to the interview being

admitted into evidence. (App. 560-561.) At that point, absent

foundation, authentication, or any other threshold showing of

admissibility, the trial court properly prevented the tapes from

being played in the jury's presence. After a proper foundation was

---

[20] The tapes were moved into evidence as exhibit ten. (App. 559, 560, 1197).

[21] However, although the interview was not played back in open court, the jury had an opportunity to listen to the interview during deliberation. (App. 1197.)

laid, the trial court admitted the tapes.

However, the Appellants did not request to have the interview played back in open court after moving it into evidence. Instead, the Appellant's counsel simply resumed questioning, the interview was not played in open court, and the jury was left with an opportunity to review the tape-recorded interview during its deliberation. (App. 1197.) As such, the trial court never improperly excluded the interview from the jury's consideration. Accordingly, we can find no merit in the Appellant's assignment of trial court error.

### 2. Officer Aloyo's deposition

Appellants also contend that the trial court abused its discretion in excluding a portion of Carlos Aloyo's deposition testimony. Aloyo was a police officer, present at the scene, who was deposed for the purposes of the instant litigation as to what he allegedly witnessed on the day of the incident. Aloyo was subpoenaed, but was not present at trial.

Aloyo's proffered deposition testimony repeated a racial epithet that Appellee allegedly directed towards Aloyo, while the Appellee was moving towards the bandstand's second entrance.[22] At trial, the Appellants proffered the deposition testimony as

---

[22] At the deposition, Mr. Aloyo testified that Appellee was "cursing, making racial remarks. Even cursed at me, called me a Puerto Rican son of a bitch, a spick." (App. 1308.) The Court initially excluded the entire second sentence of this statement, beginning with "even" and ending with "spick." (App. 997.) The court later amended the redaction to allow Aloyo's testimony that Appellee "even cursed" at him. (App. 969.)

impeachment evidence. They specifically argued that Aloya's deposition contradicted Appellee's in-court testimony that he remained calm during the incident.

The trial court allowed Aloyo's deposition testimony to be read into the record.[23] However, the trial court redacted the racial epitath from being read in the presence of the jury. (App. 967.) The Court explicitly reasoned that including the racial epitath "may create dangerous prejudice".[24] (App. 996.)

In considering whether the threat of evidence is unfairly prejudicial, courts consider these factors: (1) "the tendency of the particular conduct alleged to suggest decision on an improper basis, commonly, though not necessarily, an emotional one; (2) "the nature or style of the specific witness's narrative; (3) the likelihood that the testimony is true; and (4) the sufficiency of the other evidence presented to make a reasonable connection between the defendant and the offense charged. *See* Fed. R. Evid. 403; *United States v. Richardson*, 265 Fed. Appx. 62, 66 (3d Cir. 2008).[25]

---

[23] Fed. R. Evid. 403 provides that "(Relevant) evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id*.

[24] However, where an objection does invoke Rule 403, the trial judge should record his balancing analysis to the extent that his exercise of discretion may be fairly reviewed on appeal. *United States v. Lebovitz*, 669 F.2d 894, 901 (3d Cir.).

[25] Evidence is also unfairly prejudicial if it appeals to the juror's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise may cause a jury to base its decision on something other than the

Here, repeating a racial slur allegedly made by the Plaintiff,
where the proffered testimony is offered for impeachment purposes,
clearly has the tendency to suggest a decision on an improper
basis. Aloyo's narrative was read into the record and included
that the Appellee both cursed at him and made racial remarks. The
trial court only excluded the actual racial remark. The substance
of the deposition testimony was otherwise presented for the jury to
weigh its truth and credibility against the Appellee's testimony
that he was calm. In balancing the probativeness of the proffered
testimony against its potential for unfair prejudice, the trial
court struck an appropriate balance by redacting the racial
epitaph.[26] We, therefore, cannot identify an abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, we are procedurally powerless to
review Appellants' substantive challenge to the trial court's
denial of their pre-verdict motions for judgment as a matter of
law. We otherwise can identify no abuse of discretion in the
Superior court's evidentiary rulings. Accordingly, we **AFFIRM** the

---

established propositions in the case. *Carter v. Hewwitt*, 617 F.2d 961, 971 (3d
Cir. 1980); F.R. Evid. 403., advisory committee's note.

[26] The Third Circuit has repeatedly emphasized that the "trial court is
in a far better position than an appellate court to strike the sensitive
balance dictated by [Rule 403]; when a trial court engages in such balancing
process and articulates on record the rationale for its conclusion, its
conclusion should rarely be disturbed." *Government of the Virgin Islands v.
Pinney*, 967 F.2d 912, 918 (3d Cir. 1992); *but see Govt. of the Virgin Islands
v. Archibald*, 987 F.2d 180, 186 (3d Cir. 1993)(where there is neither an
indication that such balancing was conducted nor does the record indicate the
grounds for the trial court's decision under Rule 403, the appellate court
may undertake to examine the record itself).

Superior Court's decision.